**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**3:18-cr-00311-MOC**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **vs.** ) | |
| ) | **ORDER** |
| **NICHOLAS RICHER,** ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** is before the Court on Defendant's pro se Motion for Compassionate Release/Reduction of Sentence. (Doc. No. 240). Defendant is serving a 51-month sentence at FCI Schuylkill for conspiracy to commit wire and mail fraud, conspiracy to commit money laundering, and international money laundering. Defendant seeks early release from prison under 18 U.S.C. § 3582(c)(1)(A) based on the COVID-19 pandemic. The Government has responded in opposition to the motion.

**I.  BACKGROUND**

On October 2, 2019, Defendant entered a guilty plea to conspiracy to commit wire and mail fraud (Count 1), conspiracy to commit money laundering (Count 11), and international money laundering (Count 15), all in connection with his participation in a Costa Rica-based fraudulent telemarketing sweepstakes scheme. (Doc. No. 117). The Government voluntarily dismissed Counts 2 through 10, Counts 12 through 14, and Counts 16 through 20 of the Indictment. (Doc. No. 171). On April 22, 2020, the Court sentenced Defendant to 51 months of

-1-

imprisonment. (Id.). That sentence was at the bottom end of the sentencing guidelines range of 51 to 63 months after a downward departure based on substantial assistance to the government. (Doc. No. 172). The Defendant's presentence investigation report ("PSR") states that he has "heartburn, which he treats with Prilosec" and "a prior history of mild asthma," and he otherwise "describes his physical condition as good[.]" (Doc. No. 140). The PSR also notes a history of mental health conditions including "Anxiety" and "Bipolar Type II Disorder." (Id.).

After pleading guilty, Defendant filed notice of an appeal to the Court of Appeals for the Fourth Circuit on May 5, 2020. (Doc. No. 173). Defendant's appellate counsel ultimately filed an *Anders* brief indicating that there were "no meritorious grounds for appeal[.]" (Doc. No. 226). In a November 19, 2020 opinion, the Court of Appeals for the Fourth Circuit affirmed this Court's judgment in the case. (Id.).

Defendant asserts that he submitted a compassionate release request to the Warden at FCI Schuylkill on or about December 23, 2020, and that he had not received a response as of March 3, 2021 when he drafted the instant pro se motion. (Doc. No. 240 at 1). The Bureau of Prisons ("BOP") does not have any record of Defendant's compassionate release request in its system, and attempted follow up with FCI Schuylkill did not confirm that the Warden received and/or considered any compassionate release request from the Defendant.

On March 11, 2021, Defendant filed the instant pro se motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1). (Doc. No. 240). He did not attach to his motion any prior compassionate release request to BOP. In his motion, Defendant stated that as of the date that he

-2-

wrote the motion (March 3, 2021), there were 267 inmates at FCI Schuylkill infected with COVID-19. Id. Defendant stated that he suffers from "asthma aggravated by allergies and illness, high blood pressure, anxiety and bipolar disorder [for] which [he] take[s] Venlafaxine (ER/XR) 150mg[.]" (Id. at 1). Defendant specifically asserted that his asthma "puts [him] at increased risk of complications should [he] become infected with Covid." (Id. at 2). Defendant further stated that due to COVID-related lockdowns at the facility there have been various disruptions to normal operations: the Residential Drug Abuse Program ("RDAP") does not run during the lockdowns; commissary inventory is limited, and he has been unable to purchase Prilosec to treat his heartburn; he has been isolated in his cell for longer periods of time; and he cannot communicate as frequently with his family by phone or receive books from them. (See id. at 1-3).

Defendant is currently serving his sentence at FCI Schuylkill, a medium security facility with an adjacent minimum-security satellite camp in Minersville, Pennsylvania. BOP Inmate Locator, NICHOLAS RICHER, Reg. No. 16110-049 (https://www.bop.gov/inmateloc/). He has served two years and six months, or about 59%, of the 51-month sentence imposed by the Court. (Doc. No. 243-2). Defendant's statutory projected release date is May 14, 2022. (Id.).

FCI Schuylkill has a total of 1,060 inmates. As of April 11, 2021, only 1 inmate and 0 staff members at FCI Schuylkill are positive for COVID-19. COVID-19 Cases, BOP, https://www.bop.gov/coronavirus/. 569 inmates and 73 staff members previously tested positive for COVID-19 and have since recovered. (Id.). No inmate or staff member at the facility has died

from COVID-19. (Id.).

As Defendant acknowledges in his motion, FCI Schuylkill has gone on lockdown to address and control COVID-19 outbreaks at the facility.

Consistent with CDC guidance, the BOP has begun administering vaccines to inmates and staff at FCI Schuylkill. As of April 11, 2021, 215 inmates and 93 staff have received both doses of the COVID-19 vaccine. COVID-19 Vaccine Implementation, BOP, https://www.bop.gov/coronavirus/.

Defendant refused a COVID-19 (Pfizer-BioNTech) vaccine on February 10, 2021. (Doc. No. 243-1 at 76).

## II. DISCUSSION

By its terms, 18 U.S.C. § 3582(c)(1)(A) permits the Court to reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i). As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014).

The Sentencing Commission has issued a non-binding policy statement addressing

-4-

motions for reduction of sentences under § 3582(c)(1)(A).[1] As relevant here, the non-binding policy statement provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction"; (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and (iii) "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13.

The policy statement includes an application note specifying the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Second, the standard is met if the defendant is: (I) suffering from a

---

[1] In a recent decision, the Fourth Circuit determined that the policy statement is no longer binding on courts deciding compassionate release motions because U.S.S.G. § 1B1.13 was enacted before the First Step Act. United States v. McCoy, 981 F.3d 271 (4th Cir. 2020). Specifically, the Fourth Circuit held that the policy statement found in U.S.S.G. § 1B1.13 does not apply to compassionate release motions brought by inmates under 18 U.S.C. § 3582(c)(1)(A)(i). Id. at 281–83. The McCoy Court reasoned that, because Section 1B1.13 applies only to motions brought by the Bureau of Prisons, it cannot be the policy statement applicable in circumstances where defendants bring their own motions for compassionate release. Id. In place of the no-longer-applicable policy statement, McCoy permits "courts [to] make their own independent determinations of what constitutes an 'extraordinary and compelling reason[ ]' under § 3582(c)(1)(A), as consistent with the statutory language[.]" Id. at 284. The McCoy Court noted, however, that Section 1B1.13 "remains helpful guidance even when motions are filed by defendants." Id. at 282 n.7. Because this Court finds that the policy statement is extremely helpful in assessing motions for compassionate release brought by defendants, the Court will rely on it as guidance.

-5-

serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover. U.S.S.G. § 1B1.13, cmt. n.1(A)(ii). The application note also sets out other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances. U.S.S.G. § 1B1.13, cmt. n.1(B)-(C).

Finally, in addition to the non-binding policy statement, the Fourth Circuit has recently clarified that courts may make their own independent determinations as to what constitute "extraordinary and compelling reasons" to warrant a reduction of sentence under Section 3582(c)(1)(A). United States v. McCoy, 981 F.3d 271 (4th Cir. 2020).

The mere existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, cannot alone provide a basis for a sentence reduction. The conditions described in U.S.S.G. § 1B1.13 encompass specific serious medical conditions afflicting an individual inmate, not generalized threats to the entire population. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

That does not mean, however, that COVID-19 is irrelevant to a court's analysis of a motion under Section 3582(c)(1)(A). If an inmate has a chronic medical condition that has been

-6-

identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition may satisfy the standard of "extraordinary and compelling reasons." Under these circumstances, a chronic condition (i.e., one "from which [the defendant] is not expected to recover") reasonably may be found to be "serious" and to "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility," even if that condition would not have constituted an "extraordinary and compelling reason" absent the risk of COVID-19. U.S.S.G. § 1B1.13, cmt. n.1(A)(ii)(I).

Defendant's request for a sentence reduction is denied because he has failed to show extraordinary and compelling circumstances warranting his early release from prison. "To establish a particularized susceptibility to COVID-19, courts have required defendants to provide evidence that they suffer from a medical condition identified by the [CDC] as a COVID-19 risk factor." United States v. Chandler, No. CR 3:15MJ122 (DJN), 2020 WL 6139945 at *5 (E.D. Va. Oct. 19, 2020); United States v. Bolton, No. 1:17-cr-150-MOC-WCM-1, 2021 WL 54023, at *3 (W.D.N.C. Jan 6, 2021) ("[A] chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19 . . . may satisfy the standard of 'extraordinary and compelling reasons.'"). Defendant has failed to make this showing.

Defendant asserts that he suffers from "asthma aggravated by allergies and illness, high blood pressure, anxiety and bipolar disorder" for which he takes "Venlafaxine (ER/XR) 150mg." (Doc. No. 240). Among his ailments, Defendant asserts that only one – asthma – increases his

-7-

risk for complications should he contract COVID-19. (Id.). Defendant also cites disruption to his RDAP program due to COVID-related lockdowns, but he does not assert that any substance use disorder makes him particularly susceptible to COVID-19. (Id.).

In its guidance concerning medical conditions that may pose an increased risk due to COVID-19, the CDC lists various conditions that "can make you more likely to get severely ill from COVID-19." See People with Certain Medical Conditions, CDC (updated Mar. 29, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (emphasis in original). This, of course, does not suggest that having any of the identified medical conditions automatically increases the risk for every individual, and the defendant bears the burden of showing an actual increased risk associated with any medical condition. In this case, Defendant has failed to show that he suffers from any serious medical condition that poses an increased risk due to COVID-19.

First, Defendant asserts "asthma aggravated by allergies and illness" and that the condition increases his risk for complications if he contracts COVID-19. The CDC guidance is clear that only "moderate to severe" asthma qualifies as a potential COVID-19 risk factor. See People with Certain Medical Conditions, CDC (updated Mar. 29, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. Defendant's PSR indicates a prior history of "mild asthma." (Doc. No. 140). His BOP medical records show no evidence of a more serious asthma condition. (Doc. No. 243-1). The medical records further indicate he has "[n]o known allergies." (Id. at 39). Courts have

-8-

found that mild or intermittent asthma does not establish a particularized susceptibility to COVID-19. See, e.g., Chandler, 2020 WL 6139945, at *5; United States v. Weaver, No. 1:17-CR-235, 2020 WL 4810123, at *2 (E.D. Va. Aug. 18, 2020)

Second, Defendant asserts that he has high blood pressure. The CDC guidance states that "possibly" hypertension, or high blood pressure, can increase the risk for severe illness due to COVID-19. See People with Certain Medical Conditions, CDC (updated Mar. 29, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. However, Defendant does not assert that, much less provide any evidence of how, high blood pressure places him at any increased risk relating to COVID-19. In fact, the defendant's BOP medical records do not show any diagnosis of or treatment for high blood pressure, and a medical questionnaire contained in his records indicates a response of "Denied" for hypertension. (Doc. No. 243-1 at 22).

Third, Defendant asserts "anxiety and bipolar disorder" for which he takes "Venlafaxine (ER/XR) 150mg." The CDC guidance lists as a potential risk factor only neurological mental health conditions, such as dementia and Alzheimer's disease. See People with Certain Medical Conditions, CDC (updated Mar. 29, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. Defendant's non-neurological mental health conditions do not demonstrate particularized susceptibility to COVID-19. See Weaver, 2020 WL 4810123, at *2 (finding no particularized susceptibility based on non-neurological mental illness). In addition, Defendant's medical records show multiple prescriptions/refills for

-9-

his Venlafaxine medication, including a recent dosage increase to the current 150mg level, suggesting that the facility is appropriately and successfully treating his mental health conditions during the pandemic. (Doc. No. 243-1 at 48-49).

Fourth, Defendant asserts disruptions to his RDAP program due to COVID-related lockdowns at the facility. The CDC guidance includes substance use disorders as a potential risk factor for COVID-19. See People with Certain Medical Conditions, CDC (updated Mar. 29, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. However, Defendant does not assert that, much less provide any evidence of how, a substance use disorder places him at any increased risk relating to COVID-19, especially since he is incarcerated and unable to engage in substance use or abuse. Instead, Defendant's arguments relating to the RDAP program are focused not on his health but the fact that the program cannot be run as it normally would during lockdowns at the facility aimed at controlling COVID-19 infections, which Defendant claims will delay his qualification for early release.[2] Defendant has failed to make any showing of increased COVID-19 risk associated with substance use.[3]

---

[2] BOP reports that the RDAP program at FCI Schuylkill currently is fully operational, and has been briefly halted only twice during prior COVID-19 outbreaks at the facility.

[3] Defendant's remaining arguments that the pandemic and lockdowns at the facility have resulted in low inventory at the commissary (including the Prilosec that he takes for heartburn), increased periods of isolation, and less frequent communication with family do not fall within any category listed in the sentencing guidelines and therefore clearly fail to establish "extraordinary and compelling reasons" for compassionate release. See U.S.S.G. § 1B1.13.

Because Defendant has failed to identify any serious medical condition that poses increased risks for COVID-19, he is not entitled to compassionate release under § 3582(c)(1)(A).

Even if the Court had determined that Defendant demonstrated an extraordinary and compelling reason for compassionate release, it would deny the defendant's motion because the statutory sentencing factors weigh against release. Section 3582(c)(1)(A) requires a court to consider the factors set forth in 18 U.S.C. § 3553(a) before reducing a defendant's sentence.

Those factors include "the nature and circumstances of the underlying offense and the history and characteristics of the defendant, as well as the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence and protect the public from further crimes of the defendant." United States v. Prater, No. 3:13cr133 (DJN), 2021 WL 54364, at *4 (E.D. Va. Jan. 6, 2021) (citing 18 U.S.C. § 3553(a)(1)–(2)). In this case, the § 3553(a) sentencing factors do not support compassionate release.

Defendant's crimes were serious. He participated in an extensive telemarketing sweepstakes scam by which he and his co-conspirators defrauded innocent victims, many of whom were elderly, out of millions of dollars. Accordingly, this Court sentenced him to 51 months' imprisonment. The defendant has served two years and six months, or about 59%, of the 51-month sentence imposed by the Court. Granting Defendant early release when he has served just more than half of his sentence would not reflect the seriousness of his offenses, promote respect for the law, or provide just punishment for his crimes. See 18 U.S.C. § 3553(a)(2);

United States v. Gold, 459 F. Supp. 3d 1117, 1120-21 (N.D. Ill. 2020) (finding that the section 3553(a) factors did not favor sentence reduction for defendant who defrauded investors of nearly $2 million and had "nearly half" of his 75-month sentence remaining).

In addition, Defendant's criminal history underscores that the § 3553(a) factors do not support his request for release. Prior to his conviction for the instant telemarketing sweepstakes fraud, at age 18, Defendant received a three-month suspended sentence for criminal threatening, and separately, at age 23 received a 12-month suspended sentence for riot. (Doc. No. 140). Under these circumstances, the § 3553(a) factors weigh against early release. See Chandler, 2020 WL 6139945, at *6 (finding that the § 3553(a) factors did not support release where the defendant had an "extensive criminal history, which started at age 15" and included "multiple theft-related offenses" and "several violent offenses").

Having thus considered Defendant's motion and reviewed the pleadings, the Court enters the following Order.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's pro se Motion for Compassionate Release/Reduction of Sentence, (Doc. No. 240), is **DENIED**.

Signed: April 20, 2021

Max O. Cogburn Jr
United States District Judge

-12-

Case 3:18-cr-00311-MOC-DCK   Document 248   Filed 04/20/21   Page 12 of 12